<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE LEVY GROUP, INC.,<br><br>                    Plaintiff,<br><br>                    v.<br><br>LAND, AIR, SEA, AND RAIL LOGISTICS,<br>LLC,<br><br>                    Defendant. | Civil Action No. 20-3839 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

This matter comes before the Court upon Defendant Land, Air, Sea, and Rail Logistics, LLC's ("LASR") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to Enforce the Settlement Agreement between the Parties. (ECF No. 6.) Plaintiff The Levy Group, Inc. ("Plaintiff" or "The Levy Group") opposed (ECF No. 9) and LASR replied (ECF No. 10). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, LASR's Motion is granted.

## I.    BACKGROUND

The Levy Group is a New York corporation engaged in the business of garment manufacturing. (Compl. ¶ 1, ECF No. 1.) LASR is a New Jersey limited liability company operating a warehousing business out of a facility in Dayton, New Jersey. (*Id.* ¶¶ 2, 25.) On December 3, 2018, the parties entered into an agreement (the "Warehouse Agreement") whereby LASR agreed to store The Levy Group's coats on hangers pending shipment to customers. (*Id.* ¶¶ 9, 24.) LASR agreed to provide warehouse capacity so that The Levy Group could store a

maximum of approximately 375,000 coats on hangers at any given time from June through November 2019. (*Id.* ¶ 25(B).) The Warehouse Agreement also required LASR "to store an annual throughput of approximately 700,000 of [The Levy Group's] coats on hangers." (*Id.* ¶ 24(C).) LASR's "annual revenue under the Warehouse Agreement for the 'in and out' charges of 700,000 coats on hangers was to be $910,000 (i.e., $1.30 x 700,000 coats)." (*Id.* ¶ 26.)

The Levy Group's shipments of coats to be stored at the warehouse commenced in April 2019. (*Id.* ¶ 27.) According to the Complaint, by June of that year, the parties' relationship began to deteriorate. The Complaint avers that LASR "began complaining that the area in the [w]arehouse that it had designated for storage of [The Levy Group's] coats . . . would not be sufficient to meet its 375,000 contractual obligation" because "the maximum number of coats on hangers that it would be able to store in that area . . . was approximately 180,000." (*Id.*) As such, LASR "refused to accept any more [coats] to store in that area on its railing system." (*Id.*)

The Levy Group represents that "[o]n September 11, 2019, LASR falsely asserted to [The Levy Group] that [it] was in breach of the Warehouse Agreement." (*Id.* ¶ 29.) The claimed breaches included The Levy Group's alleged "failure to provide coats on hangers that would allow the storage of [ten] to [twelve] coats per linear foot of its railing system" and "its failure to provide an annual throughput of 700,000 coats." (*Id.* ¶ 30.) According to the Complaint, in light of these alleged breaches, LASR demanded The Levy Group either pay $675,000, or else "remove all of its coats from the [w]arehouse by November 30, 2019" while paying certain storage fees. (*Id.* ¶ 29.) The Levy Group maintains that "[a]t that time, [LASR] knew that an orderly removal of [its] coats from the [w]arehouse, given among other things, that the warehouse was not open 24/7 and [LASR] also had to service the incoming and outgoing demands of its other customers, would take several months." (*Id.*)

2

On September 16, 2019, LASR brought suit against The Levy Group in New Jersey Superior Court. (Compl., *Land, Air, Sea, & Rail Logistics, LLC v. The Levy Group, Inc.*, No. MID-L-006480 (N.J. Super. Ct. Sept. 16, 2019), Ex. A to Bratti Certif., ECF No. 6-2. LASR filed an amended complaint on September 23, 2019. (Am. Compl., *Land, Air, Sea, & Rail Logistics, LLC v. The Levy Group, Inc.*, No. MID-L-006480 (N.J. Super. Ct. Sept. 23, 2019), Ex. B to Bratti Certif., ECF No. 6-2.) The amended complaint brought breach of contract and breach of the implied covenant of good faith and fair dealing claims against The Levy Group for its alleged failure to honor the terms of the Warehouse Agreement. (*See generally id.*) According to LASR, "counsel for The Levy Group sought to negotiate a settlement of the litigation, and the parties engaged in intensive settlement negotiations." (LASR Moving Br. 2, ECF No. 6-1.) LASR reports that "[a]s a result of these negotiations, the parties ultimately reached an agreement by which the [p]rior [l]itigation was resolved. The settlement was memorialized in a[n October 14, 2019,] Memorandum of Understanding ("MOU") which was signed by both parties." (*Id.*; *see also* MOU, Ex. K to Bratti Certif., ECF No. 6-2.) LASR represents to the Court that "this agreement included a mutual release of all claims by which each of the parties released and held each other harmless for all claims up to the date of the agreement." (LASR Moving Br. 2.) In the present Complaint, The Levy Group acknowledges signing the October 2019 MOU. (Compl. ¶ 42.) Additionally, The Levy Group acknowledges that the MOU included a provision by which it agreed to "release all claims [The Levy Group] had against [LASR] for its breach of the Warehouse Agreement." (*Id.* ¶ 40(c).)

Notwithstanding the October 2019 MOU settling the Superior Court litigation, The Levy Group filed the instant action on April 8, 2020. Similar to the Superior Court claims brought by LASR, The Levy Group brings breach of contract and breach of the implied covenant of good faith

3

and fair dealing claims against LASR. (*Id.* ¶¶ 48-53.) The Complaint asserts that the October 2019 release of claims is invalid and unenforceable because The Levy Group "had no choice but to succumb to [LASR's] wrongful conduct and wrongful demands." (*Id.* ¶ 41.) The Levy Group avers that it was forced to accede to the settlement agreement "[i]n order to preserve its reputation and ability to meet its contractual obligations to Macy's and other customers." (*Id.*) According to The Levy Group, LASR's "acts, demands[,] and threats . . . were wrongful (in an immoral, inequitable, oppressive, and/or tortious sense) and/or unlawful, deprived [The Levy Group] of its unfettered will, and compelled [The Levy Group] to enter into the [MOU] for inadequate consideration." (*Id.* ¶ 43.) "Accordingly, the [MOU] is unenforceable, invalid[,] and void because [The Levy Group] entered into it under economic duress." (*Id.*) In the instant motion, LASR argues that the prior litigation's settlement agreement bars the present claims brought by The Levy Group.

## II.     LEGAL STANDARD

As a preliminary matter, the Court notes that there is considerable debate between the parties about the correct legal standard for the instant motion. LASR's Motion is presented to the Court as a "Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to Enforce the Settlement Agreement between the Parties." (ECF No. 6.) The Levy Group argues that it would be inappropriate for the Court to consider LASR's invocation of the prior litigation's settlement agreement in a Rule 12(b)(6) motion. The Levy Group characterizes the settlement agreement as "an affirmative defense to [its] breach of contract claim" that should only be considered after LASR has filed its answer to the Complaint. (The Levy Group's Opp'n Br. 16, ECF No. 9.) Additionally, The Levy Group maintains that LASR's Motion "has alleged

4

facts and provided documents that are extraneous to the four corners of the [C]omplaint." (*Id.* at 22.)

Notwithstanding The Levy Group's arguments to the contrary, on a number of occasions, both the Third Circuit and the District of New Jersey have considered a defendant's motion to enforce a settlement agreement under a Rule 12(b)(6) standard. *See, e.g., Nayak v. McNees, Wallace, & Nurick, LLC*, 700 F. App'x 172, 176 (3d Cir. 2017) (per curiam) (affirming a district court's grant of a Rule 12(b)(6) motion where a plaintiff failed to "plead any facts that would allow him to invalidate the [prior settlement agreement] based on fraud, duress, accident, or mutual mistake"); *Gillon v. Ting*, No. 12-07558, 2013 WL 5354505, at *5 (D.N.J. Sept. 24, 2013) (granting a Rule 12(b)(6) motion to dismiss where the pleaded facts "do not allow the Court to draw the reasonable inference that plaintiffs entered the settlement agreement under duress"); *Deficcio v. Winnebago Indus.*, No. 11-872, 2011 WL4594291, at *6 (D.N.J. Sept. 30, 2011) (granting a Rule 12(b)(6) motion where "[p]laintiffs have pleaded no factual basis that might plausibly lead the Court to ultimately vacate the [s]ettlement [a]greement due to fraud or deception"); *Clermont v. Brown*, No. 08-4257, 2009 WL 5205422, at *4 (D.N.J. Dec. 23, 2009) ("The plaintiffs' claims of economic duress are without merit, and the settlement agreements preclude this action from proceeding. As such, the Court will grant the motion to dismiss."). Accordingly, the Court will consider the instant motion under a Rule 12(b)(6) standard.

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most

5

Case 3:20-cv-03839-MAS-DEA   Document 11   Filed 01/28/21   Page 6 of 10 PageID: 176

favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation and citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Rule 12(b)(6) "prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at \*3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted) (internal quotation omitted)).

6

III.   **DISCUSSION**

"State law (here, the law of New Jersey) governs the construction and enforcement of settlement agreements in federal court." *Hackensack Univ. Med. Ctr. v. Xiao*, No. 17-2822, 2018 WL 2095598, at *4 (D.N.J. May 7, 2018). Under New Jersey law, "the party seeking to enforce the agreement has the initial burden of establishing that a contract of settlement was entered into." *Id.* (citing *Amatuzzo v. Kozmiuk*, 703 A.2d 9, 11-12 (N.J. Super. Ct. App. Div. 1997)). Here, it is undisputed that the parties entered into a settlement agreement that released all claims arising from the Warehouse Agreement. The Levy Group's pleadings admit this fact. (*See* Compl. ¶¶ 40-42 (admitting that the MOU "signed by the parties on Monday, October 14, 2019" required that "[The Levy Group] must release all claims it had against [LASR] for its breach of the Warehouse Agreement"); *see also* LASR Moving Br. 2 (asserting that the settlement agreement "included a mutual release of all claims by which each of the parties released and held each other harmless for all claims up to the date of the agreement"); *see also* MOU.[1])

Under New Jersey law, once "a contract of settlement is actually held to exist . . . the party seeking to vacate the settlement must show compelling circumstances." *Xiao*, 2018 WL 2095598, at *5 (alterations in original) (quoting *Amatuzzo*, 703 A.2d at 11-12); *see also Nolan v. Lee Ho*,

---

[1] Although The Levy Group maintains that LASR's Motion "has alleged facts and provided documents that are extraneous to the four corners of the [C]omplaint[,]" (The Levy Group Opp'n Br. 22), the Court finds that that the Complaint explicitly relied upon the MOU. (*See* Compl. ¶¶ 40(c), 42.) Thus, when considering the instant Motion under a Rule 12(b)(6) standard, the Court is free to consider this document. *See Burlington Coat Factory*, 114 F.3d at 1426 ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment"). Similarly, when resolving "a 12(b)(6) motion, a court may properly look at public records including judicial proceedings, in addition to the allegations in the complaint." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The New Jersey Superior Court complaints to which LASR directs the Court are such public records. The Court's opinion does not, however, consider the various email messages and other extraneous documents attached to LASR's moving brief. (*See generally* Bratti Certif., ECF No. 6-2).

577 A.2d 143, 146 (N.J. 1990) ("In general, settlement agreements will be honored absent a demonstration of fraud or other compelling circumstances . . . . Before vacating a settlement agreement, our courts require clear and convincing proof that the agreement should be vacated."). "There are two elements to economic duress under New Jersey law." *Recchia v. Kellog Co.*, 951 F. Supp. 2d 676, 683 (D.N.J. 2013). First, "the party alleging economic duress must show that [it] has been the victim of a wrongful or unlawful act or threat." *Id.* (quoting *Cont'l Bank of Pa. v. Barclay Riding Acad.*, 459 A.2d 1163, 1175 (N.J. 1983)). Second, "such act or threat must be one which deprives the victim of [its] unfettered will." *Id.* (quoting *Cont'l Bank*, 459 A.2d at 1175). "In addition, duress entails inadequate consideration." *Quigley v. KPMG Peat Marwick, LLP*, 749 A.2d 405, 412 (N.J. Super. Ct. App. Div. 2000) (citing *Cont'l Bank*, 459 A.2d at 1176).

The Levy Group argues that the settlement agreement is invalid and unenforceable because "[i]n order to preserve its reputation and ability to meet its contractual obligations to Macy's and other customers, [The Levy Group] had no choice but to succumb to [LASR's] wrongful conduct and wrongful demands." (Compl. ¶ 41.) According to The Levy Group, LASR's "acts, demands[,] and threats . . . were wrongful (in an immoral, inequitable, oppressive, and/or tortious sense) and/or unlawful, deprived [The Levy Group] of its unfettered will, and compelled [The Levy Group] to enter into the [MOU] for inadequate consideration." (*Id.* ¶ 43.) "Accordingly, the [MOU] is unenforceable, invalid[,] and void because [The Levy Group] entered into it under economic duress." (*Id.*)

The Court finds that The Levy Group has "cited no legal authority nor . . . plead[ed] any facts that would allow [it] to invalidate the [prior settlement agreement] based on fraud, duress, accident or mutual mistake" or any other grounds. *Nayak v. McNees, Wallace, & Nurick, LLC*, 700 F. App'x 172, 176 (3d Cir. 2017) (per curiam). *Nayak* is instructive. In that case, a plaintiff

8

had previously settled a dispute with a former employer. *Id.* at 173-74. In connection with the settlement, the parties executed a general release of claims in which the plaintiff waived all claims against the employer and the employer's lawyers. *Id.* at 176 n.2. Subsequently, the plaintiff brought an action against the employer's lawyers. *Id.* at 175. The action asserted that the lawyers participated in an "allegedly unlawful negotiation of the settlement agreement and general release of all legal claims." *Id.* at 174.

Under the circumstances, the Third Circuit held that "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court of Appeals noted that the plaintiff had been "represented by counsel throughout the process and his essential allegation—that facing termination is financially and emotionally stressful and that he unilaterally misunderstood the nature of the agreement—is factually and legally insufficient to state a plausible claim for fraud, duress, accident or mutual mistake." *Id.* at 176. The Third Circuit went on to reject the plaintiff's contention "that the [d]istrict [c]ourt erred in finding the [r]elease enforceable without an investigation into the facts and erred in not allowing him to amend his complaint." *Id.* at 175.

Similar to *Nayak*, The Levy Group argues that the settlement agreement is invalid and unenforceable because it only consented to the agreement due to external pressures. (Compl. ¶ 41 ("[i]n order to preserve its reputation and ability to meet its contractual obligations to Macy's and other customers, [The Levy Group] had no choice but to succumb to [LASR's] wrongful conduct and wrongful demands").) But courts applying New Jersey's law on economic duress have found that "economic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release." *Oliver v. Wincor Nixdorf Corp.*, No. 15-2921, 2018 WL 515855, at *6 (D.N.J. Jan. 23, 2018); *see, e.g., Liepe v. Liepe*, 573 F. App'x 139, 140 (3d Cir. 2014) (rejecting a

9

litigant's attempt to void a settlement agreement by alleging economic duress stemming from the opponent's initial breach of contract); *Sauter v. Fed. Home Loan Bank*, No. 08-899, 2009 WL 2424689, at *4 (D.N.J. Dec. 23, 2009) ("Merely taking advantage of another's financial difficulty, however, is not duress."). Here, the Complaint fails to allege facts that would establish economic duress within the meaning of New Jersey state law. Like the plaintiff in *Nayak* and analogous District of New Jersey cases, The Levy Group's assertion of duress "is a threadbare legal conclusion not factually supported by the pleadings." *Deficcio*, 2011 WL 4594291, at *5; *Gillon*, 2013 WL 5354505, at *5 ("[p]laintiffs' factual allegations . . . do not allow the Court to draw the reasonable inference that [p]laintiffs entered the [s]ettlement [a]greement under duress").

## IV.    CONCLUSION

For the reasons set forth above, LASR's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to Enforce the Settlement Agreement between the Parties is granted. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE